**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ROBERT GUCCIONE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 09-301** |
| **PARISH OF JEFFERSON, ET AL.** | **SECTION: "R"(5)** |

### REPORT AND RECOMMENDATION

Plaintiff, Robert Guccione, a state prisoner, filed this *pro se* complaint pursuant to 42 U.S.C. §1983. He has named as defendants the Parish of Jefferson, Judge Fred S. Bowles, Judge H. Charles Gaudin, Judge Charles Grisbaum, Judge Edward A. Dufresne, Jr., Judge Thomas C. Wicker, Jr., Judge Sol Gothard, Judge James L. Canella, Judge Thomas J. Kliebert, Judge Thomas F. Daley, Judge Susan M. Chehardy, Judge Marion F. Edwards, Judge Clarence E. McManus, Judge Walter J. Rothschild, Peter J. Fitzgerald, Jerrold Peterson, Kathi Workman, Carol Treuting, "Tina Doe," "Roz Doe," Cheryl Landrieu, Jennifer Cooper, and Leslie Langhetter.[1] In this

---

[1] Plaintiff indicates in the complaint and in a subsequent filing, Rec. doc. 7, that the individuals named as defendants are being sued in their individual capacities, and this opinion therefore addresses only individual-capacity claims. However, out of an abundance of caution, the Court notes that any official-capacity claims against these defendants for damages would likewise be barred. The defendants are officials and employees of the Louisiana Fifth Circuit Court of Appeal. Any judgment against them in their official capacities would be satisfied out of the state treasury. La.Rev.Stat.Ann. §13:5108.1. Accordingly, any such

lawsuit, plaintiff claims that he was denied his constitutional rights by the failure of the judges and employees of the Louisiana Fifth Circuit Court of Appeal to follow the applicable provisions of state law when denying his *pro se* post-conviction writ application.

## I. Standards of Review

Federal law mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. §1915A(a). Regarding such lawsuits, federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –

---

official-capacity claims against them would in reality be claims against the state itself, and, therefore, would be barred by the Eleventh Amendment. See Voisin's Oyster House, Inc. v. Guidry, 799 F.2d 183, 188 (5th Cir. 1986); see also Wallace v. Texas Tech University, 80 F.3d 1042, 1047 n.3 (5th Cir. 1996) ("Suits against state officials in their official capacity are considered to be suits against the individual office, and so are generally barred as suits against the state itself."); Doris v. Van Davis, Civ. Action No. 08-4138, 2009 WL 382653, at *2 (E.D. La. Feb. 12, 2009). Further, state officials or employees in their official capacities are not "persons" amenable to suit for damages under §1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989); see also Arizonans for Official English v. Arizona, 520 U.S. 43, 69 n.24 (1997).

(1) is frivolous, malicious, or fails to state
                    a claim upon which relief may be granted; or
                    (2) seeks monetary relief from a defendant who is
          immune from such relief.

28 U.S.C. §1915A(b).  Section 1915A "applies regardless of whether

the plaintiff has paid a filing fee or is proceeding *in forma*

*pauperis* ...."  Ruiz v. United States, 160 F.3d 273, 274 (5th Cir.

1998); see also  Woods v. Chapman, 239 Fed. App'x 35, 39 (5th Cir.

2007), cert. denied, 128 S.Ct. 890 (2008); Montoya v. Jones, 118

Fed. App'x 797, 798 (5th Cir. 2004).

     A complaint is frivolous "if it lacks an arguable basis in law

or fact."  Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). In

making a determination as to whether a claim is frivolous, the

Court has "not only the authority to dismiss a claim based on an

indisputably meritless legal theory, but also the unusual power to

pierce the veil of the complaint's factual allegations and dismiss

those claims whose factual contentions are clearly baseless."

Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A.

(Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

     A complaint fails to state a claim on which relief may be

granted when the plaintiff does not "plead enough facts to state a

claim to relief that is plausible on its face.  Factual allegations

must be enough to raise a right to relief above the speculative

level, on the assumption that all the allegations in the complaint

are true (even if doubtful in fact)." *In re* Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted), cert. denied, 128 S.Ct. 1230 and 1231 (2008).

## II. Factual Background

The instant case is one of several filed in this Court as a result of allegations which came to light upon the suicide of Jerrold Peterson, the former Central Staff Director of the Louisiana Fifth Circuit Court of Appeal.

The Louisiana Constitution provides that each state Court of Appeal "shall sit in panels of at least three judges selected according to rules adopted by the court." La. Const. art. V, §8(A). According to plaintiff, the judges of the Louisiana Fifth Circuit Court of Appeal instituted a policy in 1994 to circumvent that constitutional requirement with respect to *pro se* prisoner post-conviction filings. Plaintiff has attached to his complaint what he purports are minutes from an en banc meeting of that court's judges. In pertinent part, those minutes provide:

> Effective immediately, Judge Dufresne will handle all pro se writ applications and will not be included in the handling of regular writ applications. Special or unusual pro se applications will be submitted to a regular panel.

Rec. doc. 5, Exhibit 1, Minutes dated February 8, 1994. Plaintiff also attaches to his complaint what he purports is a letter written

to the court's judges by Peterson shortly before his suicide in which he summarized the *pro se* writ processing procedure. In that letter, Peterson states:

> While my integrity is challenged on the basis of one case, you completely ignore your own integrity in the handling of <u>pro</u> <u>se</u> criminal writ applications. For probably the past 10 years, <u>not</u> <u>one</u> criminal writ application filed by an inmate <u>pro</u> <u>se</u> has been reviewed by a Judge on the Court. I prepared the ruling on each of those writ applications, and they were signed by a Judge without so much as a glance at the application. In fact, two of the judges on the writ panel never even knew the <u>pro</u> <u>se</u> application was filed, much less aware of the application's contents. When the <u>pro</u> <u>se</u> application arrived in the mail, I opened it, prepared a ruling, and sent it to the Clerk's Office for filing. When the application returned to the Central Staff after filing, the ruling was already prepared. It was typed on the application and the application was signed by a Judge without so much as a glance. The total turnaround time was usually one or two days. It was obvious that these <u>pro</u> <u>se</u> criminal writ applications were not being reviewed because of the quick turnaround time. Moreover, although research memos are prepared for counseled criminal writ applications, a research memo for a <u>pro</u> <u>se</u> criminal writ application has not been prepared for probably 10 years. You were more than content to let me handle all <u>pro</u> <u>se</u> writs so you would not have to bother with them. Also, the large volume of <u>pro</u> <u>se</u> criminal writ applications inflated the Court's workload figures – even though no judge was involved in the handling of the writ (beyond signing a name).

Rec. doc. 5, Unnumbered Exhibit, letter dated May 19, 2007, pp. 3-5.

When Peterson's allegations were made public, many state prisoners, including plaintiff, claimed that their rights had been violated by the Court of Appeal's procedures and sought relief from the Louisiana Supreme Court. In response, the Louisiana Fifth

Circuit Court of Appeal unanimously adopted an en banc resolution

on September 9, 2008, which provided:

> Recommend to the Supreme Court the following possible solution to the Pro-Se Criminal Writ applications complaining that earlier applications by those same applicants had received inadequate review by this Court.
>
> First, we are proposing that you consider remanding each of the current applications in your court to this court with direction that they be assigned to respective three-judge panels randomly selected from five judges of this court; namely, Judges Chehardy, McManus, Wicker, Guidry and Pro Tempore Jasmine who incidentally have had no hand in the process by which this court earlier handled these multiple applicants' earlier writs in this court.
>
> Under this proposal, the applications will be controlled, handled and considered only by those five judges and such members of their respective personal staffs selected by them as a group, and as approved by the respective panels. Furthermore, none of the other three judges on this court will be involved in any way in consideration of the work of the three-judge panels, or conversant in any way with the five-panel judges to be assigned to handle these cases and their respective personal staff members which the five judges alone will choose to have assist them.
>
> We are guided in this request by a desire to avoid imposing financial or other burdens on other judges in this state who might otherwise be called upon to consider these cases out of our court.

See State v. Cordero, 993 So.2d 203, 206 (La. 2008).

In its decision on a writ application filed by one such

prisoner, Sandra Cordero, the Louisiana Supreme Court adopted that

resolution, holding:

> Therefore, in accordance with the Resolution of the Fifth Circuit Court of Appeal en banc, the application of Sandra Cordero is herewith transferred to the Fifth

Circuit Court of Appeal for consideration according to
the procedures outlined in the Fifth Circuit Court of
Appeal's en banc resolution of September 9, 2008. These
three-judge panels are to be insulated from all persons,
other than the panel judges and their respective personal
staffs. This Court also determines that the applications
presently filed and pending in this Court by petitioners,
raising similar claims and enumerated hereinabove should
also be handled in accordance with the procedures
outlined in this Order and the Fifth Circuit Court of
Appeal's en banc resolution of September 9, 2008.
Further, this Court also determines under its supervisory
authority that the applications presently filed and
pending in the Fifth Circuit Court of Appeal by those
petitioners who raise similar claims should also be
handled in accordance with the procedures outlined in
this Order and the Fifth Circuit Court of Appeal's en
banc resolution of September 9, 2008.

Cordero, 993 So.2d at 205.

On October 10, 2008, the Louisiana Supreme Court
transferred plaintiff's writ application to the Louisiana Fifth
Circuit Court of Appeal for consideration pursuant to the
procedures outlined in Cordero. State ex rel. Guccione v. State,
993 So.2d 1246 (La. 2008), reh'g denied, 1 So.3d 484 (La. 2009).

### III. Analysis

The allegations set forth in Peterson's letter are undeniably
troubling and, if true, evidence a shameful disregard for justice
on the part of the appellate court judges who conceived of such a
system and directed court staff to implement it. However, even if

plaintiff's complaint is broadly construed,[2] the Court nevertheless finds that, for the following reasons, the federal complaint should be dismissed as frivolous, for failing to state a claim on which relief may be granted, and/or for seeking monetary damages against defendants who are immune from such relief. Any relief to which plaintiff may be entitled should instead be sought from the state courts.

### A. Parish of Jefferson

As a preliminary matter, however, the Court notes that plaintiff listed the "Parish of Jefferson" as a defendant in the caption of his complaint but stated no claim against the parish in the body of the complaint. Subsequent to the filing of the complaint, plaintiff sent this Court a letter in which he stated that he did not intend to sue the Parish. Rec. doc. 7. The Court construes that letter as a notice that plaintiff is voluntarily dismissing the Parish of Jefferson from this civil action.

Subject to exceptions not applicable in this case, the Federal Rules of Civil Procedure provide that "the plaintiff may dismiss an action without a court order by filing ... a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment ...." Fed.R.Civ.P. 41(a)(1)(A)(i). When a *pro se*

---

[2] The court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

plaintiff seeks dismissal in a situation in which Rule 41(a)(1)(A)(i) would be applicable, the fact that he fails to cite that rule or correctly style the notice of dismissal is of no significance. Carter v. United States, 547 F.2d 258, 259 n.2 (5th Cir. 1977). When a plaintiff has filed a proper notice of dismissal, a court has "no power or discretion to deny [plaintiff's] right to dismiss or to attach any condition or burden on that right." Williams v. Ezell, 531 F.2d 1261, 1264 (5th Cir. 1976).

In this lawsuit, the Parish of Jefferson has filed neither an answer nor a motion for summary judgment. Accordingly, pursuant to Rule 41(a)(1)(A)(i), plaintiff's filing of his notice of dismissal has the effect of dismissing the Parish of Jefferson from this lawsuit.[3]

## B. Jerrold Peterson

Plaintiff also named Jerrold Peterson as a defendant. Because Peterson was deceased at the time this action was filed, the claim against him must be dismissed. Martinez v. United States, Civ. Action No. 96-4072, 1998 WL 92248, at *2 (E.D. La. Mar. 2,

---

[3] In any event, the Court notes that plaintiff cannot state a cognizable claim against the parish. Plaintiff's claims involve actions taken by the judges and employees of the Louisiana Fifth Circuit Court of Appeal. Because the parish government has no authority or control over that state appellate court, any claim against the parish would clearly be frivolous.

1998)("Federal law ... relies on state law to determine if a party can be named as a defendant to a lawsuit.  Louisiana law does not allow suits against the deceased."); see also Campbell v. Travelers Insurance, Civ. Action No. 06-9068, 2008 WL 145048, at *1 (E.D. La. Jan. 14, 2008).[4]

## C. Judges

Plaintiff has also named as defendants the following judges of the Louisiana Fifth Circuit Court of Appeal:  Judges Fred S. Bowles, H. Charles Gaudin, Charles Grisbaum, Edward A. Dufresne, Jr., Thomas C. Wicker, Jr., Sol Gothard, James L. Canella, Thomas J. Kliebert, Thomas F. Daley, Susan M. Chehardy, Marion F. Edwards, Clarence E. McManus, and Walter J. Rothschild.

### 1. Monetary Damages

To the extent that plaintiff is seeking an award of monetary damages against the judges, they are protected from his claims by their absolute judicial immunity.

It has long been held that "judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 351 (1871);

---

[4]  Further, even if Peterson had not died before this lawsuit was commenced, any claim against him would still be subject to dismissal for the reasons set forth in this opinion.

see also <u>Harper v. Merckle</u>, 638 F.2d 848, 856 n.9 (5th Cir. 1981)
("[W]e can envision no situation – where a judge acts after he is
approached *qua* judge by parties to a case – that could possibly
spawn a successful § 1983 suit."). The United States Supreme Court
has explained: "Like other forms of official immunity, judicial
immunity is an immunity from suit, not just from ultimate
assessment of damages. Accordingly, judicial immunity is not
overcome by allegations of bad faith or malice, the existence of
which ordinarily cannot be resolved without engaging in discovery
and eventual trial." <u>Mireles v. Waco</u>, 502 U.S. 9, 11 (1991).
Further, judicial immunity is clearly applicable in cases, such as
the instant one, brought pursuant to 42 U.S.C. §1983. <u>Stump v.
Steward</u>, 435 U.S. 349, 356 (1978); <u>Pierson v. Ray</u>, 386 U.S. 547,
554-55 (1967).

The Supreme Court has recognized only two instances in which
judicial immunity is inapplicable:

> [O]ur cases make clear that the immunity is overcome in
> only two sets of circumstances. First, a judge is not
> immune from liability for nonjudicial actions, *i.e.*,
> actions not taken in the judge's judicial capacity.
> Second, a judge is not immune for actions, though
> judicial in nature, taken in the complete absence of all
> jurisdiction.

<u>Mireles</u>, 502 U.S. at 11-12 (citations omitted). Neither of those
exceptions applies in this case.

Regarding the first exception, the Supreme Court has explained:

> The relevant cases demonstrate that the factors determining whether an act by a judge is a "judicial" one relate to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity.

Stump, 435 U.S. at 362. The act at issue here, the denial of plaintiff's writ application, clearly involves a function normally performed by a judge. Further, by filing the writ application, plaintiff was clearly dealing with the judges in their judicial capacities.

Regarding the second exception, there is no question that the judges had jurisdiction over plaintiff's writ application.

Plaintiff essentially proposes a third exception, opining that the judges should not be immune because they arguably acted beyond their authority by improperly delegating that authority to a single judge, Judge Dufresne, or allegedly ceding that authority to their staff. However, the Supreme Court has expressly rejected the contention that judicial immunity is inapplicable where a judge simply acts beyond his authority. See, e.g., Stump, 435 U.S. at 356 ("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority ....").

Accordingly, for the foregoing reasons, the Court finds that the named judges are protected by their absolute judicial immunity against plaintiff's claims for monetary damages.

## 2. Declaratory Relief

Plaintiff claims that he is innocent of the crime of which he was convicted and therefore also seeks a declaration that the judges violated his constitutional rights by failing to properly review his writ application challenging his conviction. Judicial immunity does not bar declaratory relief. Holloway v. Walker, 765 F.2d 517, 525 (5th Cir. 1985). However, plaintiff's request for declaratory relief is nevertheless barred for the following reasons.

It is apparent that plaintiff's request for declaratory relief is nothing more than a veiled attempt to challenge the validity of his present confinement. Therefore, plaintiff must pursue his challenge in a habeas corpus proceeding *after* exhausting his remedies in state court, not a federal civil rights action brought pursuant to 42 U.S.C. §1983. Smith v. Judges of La. Fifth Circuit Court of Appeal, Civ. Action No. 08-4350, 2009 WL 78430, at *2 (E.D. La. Jan. 9, 2009); see also Preiser v. Rodriquez, 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release

13

or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."); Boyd v. Biggers, 31 F.3d 279, 283 n.4 (5th Cir. 1994).

### 3. Injunctive Relief

The Court notes that plaintiff also indicates in the complaint that he is seeking injunctive relief; however, he makes no proper request for injunctive relief. In any event, even if such relief were available,[5] any request for injunctive relief would be moot.

As noted, the challenged procedures have already been discontinued. Further, the Louisiana Fifth Circuit Court of Appeal did not have the last word with respect to plaintiff's state post-conviction claims. After that court denied his writ application, plaintiff sought review from the Louisiana Supreme Court, which likewise denied his claims in a decision presumably untainted by the Court of Appeal's problematic procedures. State v. Severin, 949 So.2d 432 (La. 2007); see also State v. Cordero, 993 So.2d 203, 214 (La. 2008) (Kimball, J., concurring in the denial of rehearing)

---

[5] The Court notes that the Federal Courts Improvement Act of 1996, which amended 42 U.S.C. §1983, provides that "in any action brought against a judicial officer for an act or omission taken in such officer's official capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief is unavailable." 42 U.S.C. §1983; Guerin v. Higgins, 8 Fed. App'x 31 (2nd Cir. 2001); Nollet v. Justices of the Trial Court of the Commonwealth of Massachusetts, 83 F. Supp. 2d 204, 210 (D. Mass.), aff'd, 248 F.3d 1127 (1st Cir. 2000).

("Many of these cases have, in fact, originally been reviewed and have had opinions written by the courts of appeal and by the seven justices of this court on original appellate review, in addition to having been reviewed on post conviction by the seven justices of this court in earlier proceedings, notwithstanding the review or lack thereof that occurred precedent to ours."). Moreover, as noted, plaintiff has already been granted further state review pursuant to the procedures outlined in Cordero. State *ex rel.* Guccione v. State, 993 So.2d 1246 (La. 2008), reh'g denied, 1 So.3d 484 (La. 2009).

### D. Remaining Defendants

The remaining defendants in this lawsuit are the employees of the Louisiana Fifth Circuit Court of Appeal who acted pursuant to the challenged procedures adopted by the judges. Specifically, the remaining defendants are identified by plaintiff as the Clerk of Court (Peter J. Fitzgerald), the Assistant Central Staff Director (Kathi Workman), secretaries (Carol Treuting, "Tina Doe," and "Roz Doe"), law clerks (Cheryl Landrieu and Jennifer Cooper), and a research attorney (Leslie Langhetter).

Because they were acting at the express direction of the judges to assist them in carrying out their judicial functions, these defendants are likewise entitled absolute immunity with respect to any claim for monetary damages. See Mitchell v.

15

McBryde, 944 F.2d 229, 230-31 (5th Cir. 1991); see also Johnson v. Graves, No. 92-3586, 1993 WL 82323 (5th Cir. Mar. 18, 1993).  This is because a court employee who acts under the explicit instructions of a judge "acts as the arm of the judge and comes within his absolute immunity," even if the employee acts "in bad faith or with malice."  See Williams v. Wood, 612 F.2d 982, 985 (5th Cir. 1980); see also Clay v. Allen, 242 F.3d 679, 682 (5th Cir. 2001).  Indeed, to give blanket protection to the judges while at the same time denying protection to the subordinates acting at the judges' express direction would be perverse, egregiously unfair, and ultimately unworkable.  As the United States Fifth Circuit Court of Appeals observed when holding that a sheriff is absolutely immune for actions taken in the arguably similar situation where he executes a court order:

> [B]ecause judges are absolutely immune from suit for judicial actions taken pursuant to their jurisdiction, to deny similar protection to government officials executing their orders would render the officials lightning rods for harassing litigation aimed at judicial orders.  We note, moreover, the unfairness of imposing liability in this context – an official charged with executing a facially valid court order has no choice but to do so.  Government officials should not be required to make the Hobson's choice between disobeying the court order or being haled into court to answer for damages.  To hold otherwise would require sheriffs and other court officers enforcing facially valid orders to act as pseudo-appellate courts scrutinizing the orders of judges.  Such a result is obviously untenable.

<u>Mays v. Sudderth</u>, 97 F.3d 107, 113 (1996) (citations, footnote, quotation marks, and brackets omitted).

Moreover, to the extent that plaintiff is seeking declaratory or injunctive relief with respect to these defendants, those forms of relief are unavailable for the reasons previously discussed.

<u>E. State Law Claims</u>

Plaintiff indicates in the complaint that he is also asserting claims under state law. However, if his federal claims are dismissed as recommended, it is appropriate for the Court to decline to exercise supplemental jurisdiction over the state law claims. <u>See</u> 28 U.S.C. §1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction."); <u>see also</u> <u>Bass v. Parkwood Hospital</u>, 180 F.3d 234, 246 (5th Cir. 1999) ("When a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims.").

**RECOMMENDATION**

It is therefore **RECOMMENDED** that plaintiff's federal claims against the Parish of Jefferson be **DISMISSED WITHOUT PREJUDICE.**

It is **FURTHER RECOMMENDED** that plaintiff's federal claims against the remaining defendants be **DISMISSED WITH PREJUDICE** as frivolous, for failing to state a claim on which relief may be

granted, and/or for seeking monetary against damages defendants who are immune from such relief.

It is **FURTHER RECOMMENDED** that plaintiff's state law claims be **DISMISSED WITHOUT PREJUDICE.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this ___6th___ day of ___April___, 2009.


**ALMA L. CHASEZ**
**UNITED STATES MAGISTRATE JUDGE**

18